Carla D. Macaluso, Esq. (ID No. 018141996)
Tomasz Pacholec, Esq. (ID No. 162142015)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ
(908) 795-5213
ATTORNEYS FOR DEFENDANT OCEAN HEALTHCARE MANAGEMENT GROUP BENEFIT PLAN

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAINBUILDERS, LLC, on assignment of MRS. E., on behalf of herself and on behalf of her minor child, Y., <br><br> Plaintiff, <br><br> v. <br><br> OCEAN HEALTHCARE MANAGEMENT GROUP BENEFIT PLAN, OCEAN HEALTHCARE MANAGEMENT LLC and XYZ CORPORATION, said defendant being the company that provides the stop-loss coverage for the Plan herein, <br><br> Defendants. | Civ. Action No. _____ <br><br> **NOTICE FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, OCEAN COUNTY** |

TO: William T. Walsh, Clerk of Court
    United States District Court for the District of New Jersey
    Clarkson S. Fisher Building & U.S. Courthouse
    402 East State Street, Room 2020
    Trenton, NJ 08608

    Yaakov Pollak, Esq.
    55 Rena Lane
    Lakewood, NJ 08701

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant Ocean Healthcare Management Group Benefit Plan (the "Plan" or "Defendant"), respectfully submits this Notice of Removal of a case from the Superior Court of New Jersey, Law Division, Ocean County, bearing Docket No. OCN-L-331-20, and states as follows as grounds for removal.

1

1. On January 31, 2020, Plaintiff, Brainbuilders, LLC ("Plaintiff"), filed a civil action captioned <u>Brainbuilders, LLC, on assignment of Mrs. E., on behalf of herself and on behalf of her minor child, Y. v. Ocean Healthcare Management Group Benefit Plan, et al.</u>, Docket No. OCN-L-331-20, in the Superior Court of New Jersey, Law Division, Ocean County.

2. Defendant received a copy of the Complaint on or about February 6, 2020. A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

3. The Complaint constitutes all pleadings, process, and other documents provided to Defendant in this action. The Complaint was the initial pleading received by Defendant setting forth the claims upon which Plaintiff's action is based.

4. This Notice is timely filed under 28 U.S.C. § 1446(b) because Defendant has effected removal within thirty (30) days of receipt of a paper from which it first could be ascertained that this action is removable.

5. Defendant has not filed an answer or other pleading in the Superior Court of New Jersey, or made any appearance or argument in State Court.

6. Removal is proper under 28 U.S.C. § 1441(a) because this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 as this action involves claims that relate to the laws of the United States – specifically, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et seq.</u>

7. In Counts One and Two of the Complaint, Plaintiff brings claims for declaratory judgment and reimbursement of benefits pursuant to ERISA § 502(a)(1)(B). (<u>See</u> Exhibit A, Count One and Count Two).

8. In Count One of the Complaint, Plaintiff states that "Plaintiffs demand judgment in their favor and against Defendants for declaratory relief, per ERISA § 502(a)(1)(B), that Y. is entitled to ongoing coverage for ABA at an out-of-network provider, of which Brainbuilders is an example." (<u>See</u> Exhibit A, Count One, Wherefore Clause). Specifically, Plaintiff alleges that

2

"[t]he Plan's out-of-network exclusion for ABA that was in place since February 1, 2019 is in violation of the MHPAEA and improperly misleading, and is, thus, superseded and void." (Id. at ¶ 42).

9. In Count Two of the Complaint, Plaintiff states that "[p]ursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), a participant of a plan may bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan.'" (Id. at ¶ 46). Plaintiff contends that it has provided medical services to Y. since September 2016 to present. (Id. at ¶ 6). Plaintiff contends that "[u]nder the Plan, Plaintiff is entitled to reimbursements of at least 50% of Brainbuilders' billed amount for the services that were provided by Brainbuilders from June of 2018 up to the present, and into the future, as long as necessary, provided that Y. remains a qualified dependent." (Id. at ¶ 47).

10. Accordingly, the Complaint establishes that not only are Plaintiff's claims subject to and governed by ERISA, but that the matter is removable to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

11. Further, this Court has supplemental jurisdiction over Plaintiff's Counts Three through Five pursuant to 28 U.S.C. § 1367, which states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).[12] According to Plaintiff's Complaint, Plaintiff's federal and state law claims arise from the same set of events. (See Exhibit A).

---

[1] Counts Three through Five of the Complaint contain allegations against a fictitious party and are not directed at Defendant. (See Complaint Counts Three through Five).

[2] The only other defendant named in Plaintiff's Complaint is a fictitious party, "XYZ Corporation." That fictitious party should be disregarded for the purpose of the requirement that all defendants join in the Notice of Removal. Thus, there are no other served defendants to join in the removal of this action. See Balazik v. County of Dauphin, 44 F.3d 209, n. 4 (3d Cir. 1995) ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or defendant has been fraudulently joined.")

3

12. Venue is proper in this Court.

13. Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff, including improper service of process or Plaintiff's failure to state any claims upon which relief may be granted

14. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties and filed with the Clerk of the Superior Court of New Jersey, Law Division, Ocean County.

15. By copy of this document and in accordance with the Certificate of Service, Defendant is providing notice to all Parties in this action of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Ocean County, be removed to the United States District Court for the District of New Jersey.

    Respectfully submitted,

    JACKSON LEWIS P.C.
    200 Connell Drive, Suite 2000
    Berkeley Heights, NJ 07922
    (908) 795-5200

By: /s/ Carla D. Macaluso
    Carla D. Macaluso
    Tomasz Pacholec

    Attorneys for Defendant Ocean Healthcare
    Management Group Benefit Plan

Dated: March 6, 2020

4841-8451-0645, v. 1

# EXHIBIT A

Yaakov Pollak, Esq. (236842017)
55 Rena Lane
Lakewood, NJ 08701
Telephone: 732-833-3421
Email: pollaklawpractice@gmail.com
*Attorney for Plaintiff*

| | |
|---|---|
| BRAINBUILDERS, LLC, on assignment of MRS. E., on behalf of herself and on behalf of her minor child, Y., <br><br> Plaintiff, <br><br> vs. <br><br> OCEAN HEALTHCARE MANAGEMENT GROUP BENEFIT PLAN, OCEAN HEALTHCARE MANAGEMENT LLC and XYZ CORPORATION, said defendant being the company that provides the stop-loss coverage for the Plan herein. <br><br> Defendants. | **SUPERIOR COURT OF NEW JERSEY OCEAN COUNTY-LAW DIVISION** <br><br> **CIVIL ACTION** <br><br> **DOCKET NO.:** <br><br> **COMPLAINT** |

Plaintiff, Brainbuilders, LLC, on assignment and for the benefit of Mrs. E., on behalf of herself and on behalf of her minor child, Y., brings this action by way of Complaint, and in support thereof avers as follows:

**PARTIES**

1.   Brainbuilders, LLC ("Brainbuilders"), a New Jersey limited liability company, is a therapeutic intervention agency located at 945 River Ave., Suite 201, Lakewood, New Jersey 08701 that provides services to children with autism spectrum related disorders. These services include applied behavioral analysis ("ABA"), physical therapy, occupational therapy, and speech therapy. Mrs. E., on behalf of herself and on behalf of her minor child, Y. (collectively, "Plaintiff" and together with Brainbuilders, "Plaintiffs") executed an assignment of benefits and an

1

assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders.

2.  Upon information and belief, Defendant Ocean Healthcare Management Group Benefit Plan (the "Plan") is an employer sponsored group health plan, sponsored by Ocean Healthcare Management LLC, a New Jersey limited liability company, with its principal place of business located at 200 Boulevard Of the Americas, Suite 201, Lakewood NJ 08701.

3.  Upon information and belief, Defendant Ocean Healthcare Management LLC, a New Jersey limited liability company, with its principal place of business located at 200 Blvd Of the Americas, Suite 201, Lakewood NJ 08701, is the Plan Administrator of the Plan (the "Plan Administrator").

4.  Defendant XYZ Corporation is a fictitious name of an entity that provides the stop-loss coverage for the Plan herein that, upon information and belief, committed and/or assisted in committing the unlawful actions herein.

## JURISDICTION

5.  This Court has jurisdiction over all causes of action in this matter, including the allegations arising under Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., in which this court has concurrent jurisdiction, pursuant to Id. at § 1132(e)(1).

## FACTUAL BACKGROUND

6.  Y. is a seven-year old child whom has been diagnosed with autism spectrum disorder ("ASD") and was and is being successfully treated for such disorder by the dedicated staff of Brainbuilders from September of 2016 through the present. Brainbuilders' extraordinary experience and track-record with children diagnosed with ASD is producing remarkable results

with Y. and he is finally being given the opportunity to enjoy a happy and fulfilling life. Discontinuing Brainbuilders' treatment at this point would detrimentally reverse Y.'s gains and put his entire future, once again, in question.

7. Mrs. E., an employee of the Plan Administrator, is a participant in the Plan, and her child, Y., is covered by the Plan as a qualified dependent therein.

8. The Plan is administered by United Medical Resources, Inc. ("UMR") as a third-party administrator.

9. For services provided to Y. before in or around June of 2018, the Plan covered Y.'s treatment at Brainbuilders at their billed rates or agreed upon third-party repricing rates.

10. Beginning with services provided in or around July of 2018, the Plan and the Plan Administrator, without warning or explanation, began reimbursing Brainbuilders for its treatment of Y. at levels that are arbitrary and at a fraction of the usual and customary rates ("U&C"), as defined in the Plan documents, see Paragraph 13, *infra*.

11. The Plan is a preferred provider organization (a "PPO") and, as such, covers services rendered by both providers that are in the Plan's designated network and those that are out of network ("OON") providers. The increased options that come along with a PPO, as opposed to an EPO or an HMO that limit participants to providers within a network, is a feature that is provided in exchange for significantly higher premiums and deductibles.

12. Brainbuilders is an OON provider.

13. Per the Plan's Summary Plan Description ("SPD"), the "allowable payment amount" for a service is determined in accordance with the SPD, which provides that the amounts for OON services are calculated as a percentage of U&C as follows:

- Fee(s) that are negotiated with the Physician or facility; or
- The amount that is usually charged by health care providers in the same geographical area (or greater area, if necessary) for the same services, treatment, or materials:

3

> ➤ 110 percent of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market; or
> ➤ A gap methodology may be utilized when CMS does not have rates published for certain procedural codes; or
> ➤ 50 percent of the provider's billed charges when unable to obtain a rate published by CMS and/or gap methodology does not apply.

14. For services rendered to Plaintiff within the relevant time period, Brainbuilders submitted claims for the H0031, H0032, H2019, H2012, H2014, and 97530 current procedures terminology ("CPT") codes. There is no rate published by CMS for any of these codes (except for 97530) or for any codes to which they can be crosswalked (the industry term for assigning codes from a parallel set of health care procedure codes for an identical treatment).

15. In a letter responding to Brainbuilders' appeal, dated November 27, 2019, UMR indicated that their rates are 140% of the Medicare allowance, despite the fact that, as indicated, there are no CMS rates from for those codes.

16. Instead of being reimbursed at fifty percent of its billed rate, as required under the circumstances, Brainbuilders was reimbursed at an arbitrary, inconsistent, and unreasonably low rate.

17. Worse yet, after reviewing Brainbuilders' appeal, the Plan and the Plan Administrator, determined to defend their right to process claims arbitrarily, notified Brainbuilders that they will be reprocessing a portion of the claims for which, they posit, there were "overpayments," and, indeed, they followed up with reprocessed EOBs demanding repayments.

18. Based on a comparison between what Brainbuilders billed and the appeal response dated November 27, 2019, roughly seven percent of claims, of various amounts, were not processed at all, and for those that were processed, the percentages of the billed amounts that were approved were as follows:

| Code | % of Billed Amount Approved |
|---|---|
| H0031 – | before 10/18: 8%, after 10/18: 7% |
| H0032 – | 2% |

4

    H2012 — 6%
    H2014 — before 10/18: 20%, after 10/18: 10%
    H2019 — before 10/18: 13%, after 10/18: 10%
    97530 — before 10/18: 70%, after 10/18: 52%, after 1/19: 29%
           (with a few processed at 13%, 17%, and 23%)

19. In addition to the aforementioned reimbursements being inconsistent with the explicit terms of the Plan, upon information and belief that the same cannot be said for medical/surgical benefits under the Plan, the low rates violate the Mental Health Parity and Addiction Equity Act (the "MHPAEA"), which prohibits differing standards of coverage for mental health treatments and medical/surgical treatments.

20. The Plan's SPD contains the following statement:

> It is intended that this Plan meet all applicable requirements of ERISA and other federal regulations. In the event of any conflict between this Plan and ERISA or other federal regulations, the provisions of ERISA and the federal regulations shall be deemed controlling, and any conflicting part of this Plan shall be deemed superseded to the extent of the conflict.

Moreover, the SPD, specifically, states that "[t]his group health Plan also complies with the provisions of the: Mental Health Parity Act." Because the Plan would otherwise be in violation of the MHPAEA, Y. is entitled to reimbursement on par with medical/surgical treatments by the terms of the Plan.

21. In June of 2019, Brainbuilders was notified that, as of February 1, 2019, the Plan has been amended to exclude ABA services that are provided by out-of-network providers (the "ABA Exclusion"). The amendment does not exclude other OON services—only ABA—and is invalid for several reasons.

22. First, the ABA Exclusion violates the MHPAEA, which provides, among other provisions, "if the plan or coverage provides coverage for medical or surgical benefits provided

5

by out-of-network providers, the plan or coverage shall provide coverage for mental health or substance use disorder benefits provided by out-of-network providers . . . ." 29 USC § 1185a(a)(5). Here too, because the ABA Exclusion violates the MHPAEA, the exclusion is superseded, and the excluded benefits continue to be covered by the terms of the Plan.

23. Second, by only disclosing the ABA Exclusion in the summary section of the SPD and not in the detailed "Covered Medical Benefits" section, where ABA is listed as a covered benefit without a hint of the exclusion, the Plan and the Plan Administrator are violating the rule that "restrictive plan provisions" can only be omitted if "adjacent to the benefit description the page on which the restrictions are described is noted." See 29 C.F.R. § 2520.102-2. For this reason as well, the exclusion is superseded, and Y. is entitled to the benefits.

24. Finally, even if the ABA Exclusion was appropriate, Brainbuilders' treatment of Y. should still be covered by the Plan because, upon information and belief, the Plan's designated network is inadequate to satisfy Y.'s treatment specifications and do not offer the full array of services, including center-based group ABA, that are vital for Y's development and have proven effective for his condition.

25. Mrs. Y. has continuously paid the premiums due in accordance with the terms of the Plan.

26. Y.'s treatment at Brainbuilders has been continuously pre-authorized by the Plan and the Plan Administrator, with the latest pre-authorization dated as of May 21, 2019 (several months after the Plan, purportedly, added the ABA Exclusion).

27. Due to the high stakes involved, Brainbuilders has, for the time being, elected to continue the treatment of Y., in the hope that the Plan and the Plan Administrator would recognize

their duty and provide the vital resources to make it possible, but, so far, the Plan and the Plan Administrator continue to deny coverage. As mentioned *supra*, not only has the Plan and the Plan Administrator drastically underpaid for Y.'s treatment for a long period of time, they then double-down by improperly excluding the coverage entirely. Were Brainbuilders to discontinue treatment, Y.'s entire future would be placed in jeopardy and he would be deprived of his rights and reasonable expectations under the Plan.

28. As of June 2019, the Plan and the Plan Administrator, in addition to their actions concerning ABA, halted payments for occupational therapy, for which OON services are not excluded, the Plan and the Plan Administrator's position regarding ABA notwithstanding.

29. The Plan Administrator is a fiduciary that has a duty to administer the Plan "solely in the interest of the participants and beneficiaries . . . . with the care, skill, prudence, and diligence . . . . in accordance with the documents and instruments governing the plan . . . ." *See* 29 U.S.C. § 1104.

30. By denying E. and Y. the benefits they deserve, by way of the aforementioned underpayments and institution of the ABA Exclusion, in contravention to the provisions of the Plan, the Plan Administrator has breached its fiduciary duties to the Plan and its participants.

31. Upon information and belief, the Plan and the Plan Administrator were assisted in their scheme to underpay the claims and then to insert the ABA Exclusion by the company that provides the stop-loss coverage for the Plan.

32. On or about June 2019, in a telephone conversation between Brainbuilders' management and an agent of the Plan and the Plan Administrator, the agent informed Brainbuilders that the Plan and the Plan Administrator devised the strategy of lower reimbursement rates for

ABA and the elimination of coverage for out-of-network ABA services entirely with the reinsurer that provides stop-loss coverage to the Plan, thereby conspiring with and aiding and abetting the Plan and the Plan Administrator in the denial of E.'s and Y.'s rightful benefits and in the breach fiduciary duties.

33. The scheme to underpay for ABA and to eliminate OON ABA coverage was to save money by neglecting the responsibility for Y.'s wellbeing and failing to deliver on the reasonable expectations of the Plan's participants.

34. On June 28, 2019, pursuant to 29 U.S.C. § 1024(b)(4), 29 U.S.C. § 1185(a)(4), 29 C.F.R. 2560.503-1, 29 C.F.R. 2590.715-2719, and the Plan documents, Brainbuilders requested that Plan Administrator provide the following:

- A copy of the Plan and a copy of the summary plan description ("SPD").
- Copies of all documents governing the Plan, including insurance contracts, collective bargaining agreements, and a copy of the latest annual report(s) (Form 5500 Series) that is filed by the Plan with the U.S. Department of Labor for years 2017, 2018 and 2019.
- Copy of Provider Directory Information which the has given to the Employee (as per the plan at page 52). Also all documents relating to when and how it was provided to the employee or when and how such information was furnished to the Employee for years 2018 and 2019.
- Copies of and all documents related to, reviewed and/or generated due to any and/or all Appeals for beneficiary in attached assignment form in year 2018 and 2019.
- Copies of and all documents related to, reviewed and/or generated in regard to any AND /OR ALL Adverse Benefits Determinations "ABD" for beneficiary in attached assignment form in year 2018 and 2019.

35. On or around July 2, 2019, Brainbuilders received a response from UMR, the Plan's third-party administrator, requesting preliminary information so that they can respond to Brainbuilders request for information. Brainbuilders immediately provided the requested items.

36. To date, except for the SPD, Brainbuilders has not received any of the requested information or materials.

8

37. On September 9, 2019, Brainbuilders appealed the adverse benefit determinations in accordance with the procedures set forth in the Plan.

38. Sometime after December 3, 2019—well beyond the deadline for appeal responses—UMR responded to our appeal without providing satisfactory grounds for the denials and without providing any of the requested documents.

39. The failure to provide the requested materials denies Plaintiff's right to additional levels of appeal that are provided by the Plan should its members choose to do so.

## CAUSES OF ACTION

### COUNT ONE
### ERISA §502(A)(1)(B)
### DECLARATORY JUDGMENT

40. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

41. Y. is a seven-year old child with autism spectrum disorder ("ASD") whose only hope is the tried-and-tested treatment at the hands of the dedicated staff of Brainbuilders. Brainbuilders' extraordinary expertise has been successful with Y. and is projected to result in his finally having the opportunity to enjoy a happy and fulfilling life. Discontinuing Brainbuilders' treatment at this point would not only deny him that hope, it will place his hard-earned progress in jeopardy.

42. The Plan's out-of-network exclusion for ABA that was in place since February 1, 2019 is in violation of the MHPAEA and improperly misleading, and is, thus, superseded and void.

43. Moreover, upon information and belief, the Plan's designated network is inadequate to satisfy Y.'s treatment specifications, and should, therefore, be allowed to continue his vital treatment at Brainbuilders, even if the ABA Exclusion was valid

44.     Although, believing that Y. is entitled to the coverage, Brainbuilders continues to treat Y., they cannot carry on much longer. Bearing in mind the potential devastation that can result from ASD, Y.'s entire future hangs in the balance.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants for declaratory relief, per ERISA §502(a)(1)(B), that Y. is entitled to ongoing coverage for ABA at an out-of-network provider, of which Brainbuilders is an example, and that such treatment shall be reimbursed at levels that are founded upon a rational and reasoned basis, that are consistent with the provisions of the Plan and do not violate the MHPAEA.

## COUNT TWO
## ERISA §502(a)(1)(B)

45.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

46.     Pursuant to ERISA §502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), a participant of a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan."

47.     Under the Plan, Plaintiff is entitled to reimbursements of at least 50% of Brainbuilders' billed amount for the services that were provided by Brainbuilders from June of 2018 up to the present, and into the future, as long as necessary, provided that Y. remains a qualified dependent.

48.     Under the Plan, Plaintiff is entitled to the documents that were relied upon for adverse determinations, of which it has received practically nothing.

**WHEREFORE**, Plaintiffs demand judgement in their favor against Defendants as follows:

  A. Ordering the Plan and the Plan Administrator to pay Plaintiffs at least 50% of Brainbuilders' billed amount for all the services provided by Brainbuilders that were provided from June 2018 until the present, and into the future as long as necessary, provided that Y. remains a qualified dependent.

  B. Enforcing Plaintiffs' right to reimbursement for all the services provided by Brainbuilders going forward.

  C. Ordering Defendants to provide plan information and documents that Plaintiffs requested;

  D. Awarding of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(1).

  E. Awarding all other relief to which Plaintiffs are entitled.

## COUNT THREE
## INTENTIONAL INTERFERENCE IN AN ECONOMIC RELATIONSHIP

  49. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

  50. Upon information and belief, XYZ Corporation, said defendant being the company that provides the stop-loss coverage for the Plan, has unlawfully and tortiously interfered in the current and prospective economic relationship between Plaintiff and the Plan and the Plan Administrator by inducing the Plan Administrator to reduce and/or eliminate coverage for Y. under the Plan.

  51. In an effort to curb the claims submitted by members of the Plan, each of which raises the likelihood and/or frequency that the Plan and the Plan Administrator will resort to seeking reimbursement from their stop-loss insurer, said defendant have encouraged the Plan and

11

the Plan Administrator to unlawfully reduce and/or eliminate ABA coverage under the Plan, thereby intentionally interfering with the performance and continuation of the contract and causing actual damage to the Plaintiff.

**WHEREFORE**, Plaintiffs demand judgement in their favor against defendant XYZ Corporation (a) Compensatory damages in an amount to be determined at trial; (b) consequential damages in an amount to be determined at trial; (c) punitive damages; (d) interest; (e) attorney's fees; and (f) costs of suit.

## COUNT FOUR
## CIVIL CONSPIRACY

52. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

53. In New Jersey, a civil conspiracy consists of (a) a combination of persons conspiring to commit an unlawful act (or a lawful act by unlawful means) of which the principal element is to inflict a wrong or injury upon another person, (b) an overt act, that (c) results in damage to that person.

54. Upon information and belief, defendant XYZ Corporation, said defendant being the company that provides the stop-loss coverage for the Plan, (a) has unlawfully conspired with the Plan and the Plan Administrator to deny Plaintiff its rights under the Plan and to have the Plan Administrator breach its fiduciary duties, (b) the Plan and the Plan Administrator have acted upon such conspiracy, and (c) such conspiracy has resulted in damage to Plaintiff.

**WHEREFORE**, Plaintiffs demand judgement in their favor against XYZ Corporation for Corporation (a) Compensatory damages in an amount to be determined at trial; (b) consequential

damages in an amount to be determined at trial; (c) punitive damages; (d) interest; (e) attorney's fees; and (f) costs of suit.

## COUNT FIVE
## CIVIL AIDING AND ABETTING

55. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

56. Upon information and belief, defendant XYZ Corporation, said defendant being the company that provides the stop-loss coverage for the Plan, aided and abetted the Plan and the Plan Administrator in the unlawful denial of E.'s and Y.'s rightful benefits and in the Plan Administrator's breach of its fiduciary duties.

**WHEREFORE**, Plaintiffs demand judgement in their favor against XYZ Corporation for Corporation (a) Compensatory damages in an amount to be determined at trial; (b) consequential damages in an amount to be determined at trial; (c) punitive damages; (d) interest; (e) attorney's fees; and (f) costs of suit.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Yaakov Pollak, Esq. is designated as trial counsel in this matter.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO R 4:5-1

I certify that to my knowledge and based on the information available to me at this time, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and that no additional parties are known at this time who should be added.

Dated: January 31, 2020                         Respectfully submitted,

                                                **/s/ Yaakov Pollak**
                                                Yaakov Pollak, Esq.
                                                55 Rena Lane
                                                Lakewood, NJ 08701
                                                Telephone: 732-833-3421
                                                Email: pollaklawpractice@gmail.com
                                                *Attorney for Plaintiff*