**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAINBUILDERS, LLC, | Civil Action No. 20-2495 (MAS) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| OCEAN HEALTHCARE MANAGEMENT GROUP BENEFIT PLAN, et al., | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

This matter has been opened to the Court upon motion by Plaintiff Brainbuilders, LLC ("Plaintiff") seeking an Order compelling discovery from Defendants Ocean Healthcare Management Group Benefit Plan (the "Plan") and Ocean Healthcare Management LLC ("Ocean Healthcare") (collectively, "Defendants").   (Docket Entry No. 11).   Defendants oppose Plaintiff's Motion to Compel.   The Court has fully reviewed all arguments raised in support of and in opposition to Plaintiff's motion and considers same without oral argument pursuant to L.Civ.R. 78.1(b).   For the reasons that follow, Plaintiff's Motion to Compel is DENIED.

**I.       BACKGROUND AND PROCEDURAL HISTORY**

On January 31, 2020, Plaintiff filed its Complaint in Superior Court of New Jersey, Ocean County, asserting a claim for a declaratory judgment against Defendants and for benefits under a plan governed by ERISA, 29 U.S.C. § 1132(a)(1)(B), and claims of intentional interference in an economic relationship, civil conspiracy, and civil aiding and abetting against XYZ Corporation, the unidentified company that provides stop-loss insurance coverage to the

Defendants with respect to the Plan.   On March 6, 2020, Defendants removed the case to this Court.   (Docket Entry No. 1).   The Initial Pretrial Conference was held on April 14, 2020, and Defendants were directed to produce the administrative record by May 15, 2020.   Subsequently, the parties informed the Court that there was a dispute concerning whether discovery is limited to the administrative record.   The Court granted leave for Plaintiff to file a formal motion to compel, which is addressed herein.

### A. BACKGROUND

Plaintiff's claims arise from services provided by it to the minor child Y as a provider of services to children with autism spectrum disorders ("ASD").   (Compl. ¶ 1, Docket Entry No. 1, Ex. A).   Mrs. E and her minor child Y are participants in the Plan and have assigned their rights to benefits under the Plan to Plaintiff.   (Compl. ¶¶ 1, 7).   Plaintiff has been providing services to Y from September 2016 to the present.   (Compl. ¶ 6).

The Plan is administered by third-party administrator United Medical Resources, Inc. ("UMR").   (Compl. ¶ 8).   Plaintiff is considered an out-of-network provider under the Plan. (Compl. ¶¶ 11, 12).   Services provided by Plaintiff to Y before approximately June 2018 were paid by the Plan "at their billed rates or agreed upon third-party repricing rates."   (Compl. ¶ 9). Subsequently, the services provided by Plaintiff to Y were paid by the Plan at lower rates. (Compl. ¶ 10).

According to Plaintiff, the Plan's Summary Plan Description ("SPD") states that out-of-network providers will be reimbursed at a rate determined as follows:

- Fee(s) that are negotiated with the Physician or facility; or
- The amount that is usually charged by health care providers in the same geographic area (or greater area, if necessary) for the same services, treatment, or materials;
  - 110 percent of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or

similar services within the geographic market;[1] or
- o A gap methodology may be utilized when CMS does not have rates published for certain procedural codes; or
- o 50 percent of the provider's billed charges when unable to obtain a rate published by CMS and/or gap methodology does not apply.

(Compl. ¶ 13).   Plaintiff alleges that there is no rate published by CMS with respect to the submitted claims, and they therefore should have been paid at the rate of 50 percent of Plaintiff's billed charges.   (Compl. ¶¶ 14-16).   During the claims review process, the Plan also notified the Plaintiff of certain "overpayments" with respect to a portion of the disputed claims and requested reimbursement.   (Compl. ¶ 17).

On February 1, 2019, the Plan was amended to exclude applied behavioral analysis ("ABA") services provided by out-of-network providers such as Plaintiff (the "ABA Exclusion").   (Compl. ¶ 21).   Plaintiff also alleges in this motion that the low reimbursement rates and ABA Exclusion violate the Mental Health Parity and Addiction Equity Act (the "MHPAEA") and that Defendants conspired with the stop-loss insurance provider to reduce reimbursement rates for ABA services and then eliminate them for out-of-network providers entirely.   (Compl. ¶¶ 19-22, 32).

In June 2019, the Plan also stopped reimbursing Plaintiff for occupational therapy services for Y.   (Compl. ¶ 28).

On September 9, 2019, Plaintiff appealed the denial of its benefit claims.   (Compl. ¶ 37). "Sometime after December 3, 2019," UMR denied the claims again.   (Compl. ¶ 38).

---

[1] In footnote 1 of its sur-reply to this motion, a letter dated October 26, 2020 (Docket Entry No. 19), Defendants assert that Plaintiff here points to an outdated SPD.   Instead, they say that the correct SPD requires reimbursement at "140 percent of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market," and they have complied with this term.

### B.  DISCOVERY DISPUTES

When it filed the Complaint in state court, Plaintiff also served its Initial Request for Production of Documents and Electronically Stored Information.   (Brief in Support of Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's Initial Request for Documents ("Pl. Brief"), Ex. A, Docket Entry No. 11).   On June 11, 2020, Defendants produced the administrative record of Plaintiff's claims and appeals.   (Defendants' Brief in Opposition to Plaintiff's Motion to Compel Discovery ("Def. Brief") at 3, Docket Entry No. 12).   Plaintiff and Defendants subsequently conferred, with Defendants continuing to assert their position that discovery is limited to the administrative record under ERISA.   On July 20, 2020, Defendants responded to Plaintiff's July 13, 2020 supplemental discovery requests.   (Def. Brief at 4).   After continued discussions with each other and with the Court, the parties have been unable to agree on the scope of discovery.   On July 27, 2020, the Court directed the Plaintiff to submit this Motion to Compel to decide whether Plaintiff is limited to discovery of the administrative record (Docket Entry No. 10), which it did on August 14, 2020 (Docket Entry No. 11).

Prior to filing this motion, however, on July 20, 2021, Plaintiff served a subpoena on UMR for documents and communications between UMR and Ocean Healthcare.   Defendants objected to the subpoena, asserting that it sought materials outside of the administrative record, which is not permissible under Defendants' arguments as part of this Motion to Compel, and that Plaintiff was asking for substantially similar information from UMR that it sought from Defendants.   The Court ordered that the subpoena served on UMR be held in abeyance pending the Court's ruling on this motion.   (Docket Entry No. 14).

## II.    THE PARTIES' ARGUMENTS

### A.  PLAINTIFF'S ARGUMENTS

In its opening brief on this motion, Plaintiff focuses on the allegedly deficient response

by Defendants to the following requests by Plaintiff:

- True copies of all documents that were generated, reviewed, and/or relied upon in the process of reviewing claims for services provided by Brainbuilders to Y. from June 2018 until the present. Including any document or communication that discusses the reimbursement rates for the claims for services provided from June 2018 until February 2019, and any document that addresses the amending of the Plan to exclude ABA from February 2019 and forward.

- True copies of all documents that were generated, reviewed, and/or relied upon in the process of reviewing appeals of adverse benefit determinations pertaining to services provided by Brainbuilders to Y. from June 2018 until the present.   Including any document or communication that discusses the basis for the reimbursement rate for the claims for services provided from June 2018 until February 2019, and any material that addresses the amending of the Plan to exclude ABA from February 2019 and forward.

(Pl. Brief at 3-4).   Although Defendants have produced the administrative record for Plaintiff's

claims, Plaintiff asserts that the Plan "did not provide any relevant information concerning the

*how* and *why* of its administration of the Plan, it only produced evidence that it *did* conduct some

measure of processing[.]"   (Pl. Brief at 4).   Plaintiff clarified in its reply brief that "the main

focus of the Motion to Compel was documents that shed light on the rate of reimbursement for

services provided from July 2018 to February 2019."   (Plaintiff's Reply to Defendant's

Opposition to Motion to Compel Discovery ("Pl. Reply Brief") at 1).   Plaintiff seeks documents

related to the "determination" of Plaintiff's claims and to show "how such determination was

consistent with the set forth methodology."   (Pl. Reply Brief at 2).   "[W]hat Plaintiff seeks is

not 'reimbursement data' [utilized by UMR] *per se*; they seek a hint of a justification."   (Pl.

Reply Brief at 4).

Plaintiff argues that the administrative record must contain all information that the administrator considered when making its decision, "including all policies and procedures that were relied upon."   (Pl. Brief at 5).   Plaintiff alleges that Defendants have produced only "*the record of its administration*, as opposed to *all documents that were used, or should have been used, in the process of administration* [according to 40 CFR § 300.810(a)]."   (Pl. Brief at 5-6) (emphasis in original).   Here, Plaintiff relies on *Harrison v. Wells Fargo Bank*, 773 F.3d 15, 20 (4th Cir. 2014) and *Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137, 1142 (11th Cir. 1989) for the proposition that the administrative record includes not only materials replied upon by the plan administrator to decide the benefit claims and appeals but also materials that "*should* have been" reviewed.   (Pl. Brief at 8) (emphasis in original).

According to Plaintiff, the documents sought are not only required to be produced as part of this lawsuit but also required to be furnished to ERISA plan participants under 29 U.S.C. § 1024(b)(4), 29 U.S.C. § 1185a(4), 29 C.F.R. 2560.503-1(m)(8), and 29 C.F.R. 2590.715-2719. ERISA imposes a $110 fine per day for failure to provide required disclosures to plan participants.   (Pl. Brief at 4, citing 29 U.S.C. § 1132).

Plaintiff also asserts, however, that discovery in this case is not limited to the administrative record because the Plan did not follow the "unambiguous terms of the Plan" for "determining reimbursement amounts."   (Pl. Brief at 8).   Plaintiff appears to be arguing that because the Plan did not need to use discretion to interpret the terms of the Plan in this case (since those terms unambiguously required the payment of higher amounts for Plaintiff's claims), discovery is not limited to the administrative record.   (*See* Pl. Reply Brief at 3) ("Plaintiff's [sic] have extensively argued that, because the Plan provides for a methodology for

setting the Rates, compliance thereto was not a discretionary function.").

Finally, Plaintiff argues that it is entitled to the discovery it seeks outside the administrative record because it is relevant to the non-ERISA claims against the unnamed defendant stop-loss insurance provider to the Plan.   (Pl. Brief at 9, citing Fed. R. Civ. P. 26(b)(1)).   Plaintiff offers only three sentences in support of this argument, however.

## B.  DEFENDANTS' ARGUMENTS

Defendants assert that they have produced all relevant documents under ERISA (29 U.S.C. § 1024(b)(4)) and Federal Rule of Civil Procedure 26(b)(1) and Plaintiff has not sufficiently clarified what it is still seeking.   (Def. Brief at 9-10).   Defendants have provided Plaintiff with:

1) SPDs from 2018, 2019 and 2020;
2) Explanation of Benefits ("EOB") for Plaintiff's claims for reimbursement;
3) Correspondence between UMR . . . and Plaintiff regarding Plaintiff's claims as well as the Applied Behavioral Analysis ("ABA") exclusion;
4) Documents related to Plaintiff's initial administrative appeal and the decision regarding same; and
5) Form 5500s

(Def. Brief at 10).[2]   According to Defendants, "it is unclear what else Plaintiff is looking for and it has failed entirely to demonstrate the likelihood that there is even any other documents or information relevant."[3]   (Id.).

---

[2] With respect to Plaintiff's Request No. 7, Defendants objected because it "required the preparation of new documents solely for their production."   (Def. Brief at 11).   Request No. 7 seeks "True and complete Tax Identification Number Run report in Microsoft Excel format that contains all detailed information relating to claims and appeals submitted by Brainbuilders to, or processed or administered by, the Plan and the Plan Administrator since January 1, 2016."   (Pl. Brief, Ex A).

[3] Although Plaintiff requested documents related to the ABA Exclusion, Defendants argue that this request is "overbroad, irrelevant, and without any legitimate basis" and would be burdensome, particularly given that there is no specific time period or custodian.   (Def. Brief at 2, 15-16).   Defendants did produce "communications between UMR and Plaintiff related to the ABA amendment and Plaintiff's notification of same."   (Id.)   "The decision by the Plan to include or exclude certain out-of-network services are beyond the scope and entirely unrelated to Plaintiff's claim for benefits in this matter."   (Id. at 15).

In response to Plaintiff's clarification in its reply brief that its focus is on "documents that shed light on the rate of reimbursement for services provided from July 2018 to February 2019, (Pl. Reply Brief at 1), Defendants filed their letter dated October 26, 2020 ("Def. Sur-Reply Letter").   According to the letter, UMR paid Plaintiff "140 percent of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market," as per the terms of the plan.   The November 27, 2019 appeal response provided to Plaintiff as part of the administrative record sets forth the reimbursement rates for each of the services dates disputed and the CPT codes used.   According to Defendants, "there are no other responsive materials that would 'shed light on Defendants' reimbursement rate for services provided from July 2018 to February 2019."   (Def Sur-Reply Letter at 2).   Defendants assert that Plaintiff's disagreement with the reimbursement rates used does not expand the scope of discovery.   (*Id.*)

Defendant states that Plaintiff's reliance on *Harrison* and *Jett* to argue that materials a plan administrator *should* have considered are part of the administrative record is misplaced. Neither case addresses the scope of discovery under ERISA.   While *Harrison* finds that defendant did not consider readily available evidence when rejecting a benefits claim, Plaintiff here makes no allegation that the Plan "failed to consider any medical information they were made aware of in their reimbursement decisions."   (Def. Brief at 12).   In *Jett*, the 11th Circuit reversed a District Court's decision to conduct a de novo review of a plan's decision to deny a claim because of the lack of medical necessity.   "Plaintiff, however, cites to the dissenting opinion in that matter to support the proposition that 'sources that were readily available or that should have been contracted are relevant for an arbitrary and capricious review.'"   (Def. Brief at

13).

Defendants argue that where an ERISA-covered employee benefit plan provides discretionary authority to the plan to determine eligibility for benefits or interpret the terms of the plan, a deferential standard of review applies and discovery is limited to "the record of evidence that was before the administrator when he made the decision being reviewed."   (Def. Brief at 6-8) (internal quotations and citations omitted).   They argue that nowhere does Plaintiff contest the arbitrary and capricious standard of review or provide a reason why discovery beyond the administrative record should be permitted, such as "a structural or procedural conflict." (Def. Brief at 8).

Defendants also assert that the failure to adhere to the terms of the Plan alleged by Plaintiff, which they contend is a misunderstanding by Plaintiff of those terms, "is not a basis for additional discovery."   (*Id.*)   The SPDs provide the reimbursement rates for services provided by out-of-network providers, and the November 27, 2019 appeal decision explains the "basis for Plaintiff's reimbursement."   (*Id.*)

With respect to discovery regarding Plaintiff's non-ERISA claims, Defendants argue that "Plaintiff should not be permitted to circumvent well settled law and expand the scope of discovery in this matter by simply repackaging its ERISA claim for benefits through common law causes of action . . . [S]uch claims are preempted by ERISA and thus, provide no independent basis for discovery."   (Def. Brief at 2).   They assert that ERISA provides a comprehensive regulatory scheme for employee benefit plans and completely preempts state law in this area, preventing Plaintiff from seeking additional discovery with respect to its asserted non-ERISA claims.   (Def. Brief at 16-20) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208).

Defendants assert that courts conduct a two-part analysis to determine whether state law claims are preempted under ERISA.   First, the court looks at whether the plan is an ERISA benefits plan.   Second, the court examines whether the state laws "relate to" that plan.   Here, Defendant argues that Plaintiff's breach of contract, good faith and fair dealing, and intentional interference claims all relate to the operation of the ERISA plan and benefit claims denials. (Def. Brief at 17-20).

### III.   ANALYSIS

#### A.  WHETHER DISCOVERY IS LIMITED TO ADMINISTRATIVE RECORD

Where an ERISA-covered employee benefit plan grants the claims administrator, here UMR, discretion to determine whether a claim is payable under the plan and to interpret and construe the terms of the plan with respect to claims for benefits and appeals, a claim for benefits is reviewed under the arbitrary and capricious standard.   *Estate of Kevin Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).   Further, where a claim for benefits is reviewed under the arbitrary and capricious standard, the record on review is generally "limited to that evidence that was before the administrator when it made the decision being reviewed[,]" *i.e.*, the administrative record.   *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997); *Kosiba v. Merck & Co.*, 384 F.3d 58, 69 (3d Cir. 2004).   This helps further "ERISA's goal of providing plan participants and beneficiaries an expeditious and inexpensive method of resolving their disputes" and "encourage[s] the parties to resolve their dispute at the administrative level." *O'Sullivan v. Metro. Life. Ins. Co.*, 114 F.Supp. 2d 303, 309 (D.N.J. 2000).

There are, however, circumstances under which discovery outside the administrative record is permissible.   Namely, a "[p]laintiff's use of evidence beyond the administrative record is appropriate to prove a 'conflict of interest, bias, or a pattern of inconsistent benefit decisions.'"

*Delso v. Trustees of the Ret. Plan for the Hourly Employees of Merck & Co., Inc.*, Civil No. 04-3009 (AET), 2006 WL 3000199, at *2 (D.N.J. Oct. 20, 2006) (quoting *Otto v. W. Pa. Teamsters and Employers Pension Fund*, 127 Fed. App'x 17, 21 n.7 (3d Cir. 2005)).   Thus, "[i]f a plaintiff establishes a reasonable suspicion of misconduct, then courts should allow discovery requests reasonably likely to either confirm or disconfirm the presence of bias[,]" conflicts of interest and/or a pattern of inconsistent benefit decisions.   *Id*. at 3-4 (citing *Kosiba*, 384 F.3d at 67 n. 5; *Otto*, 127 Fed. App'x at 21 n. 7); *Dandridge v. Raytheon Co.*, Civil No. 08-4793 (WJM), 2010 U.S. Dist. LEXIS 5854, at *15-16 (D.N.J. Jan. 26, 2010) (holding "that some discovery into alleged procedural irregularities is permitted in ERISA cases, but only when the party seeking discovery has made at least some minimal showing of bias or irregularity that could have impacted the administration of the claim").   Importantly, when discovery is permitted, it must focus on "the presence of a conflict of interest, bias, or inconsistent decision making[.]"   *Delso*, 2006 WL 3000199, at *2.   "[D]iscovery into the *merits* of the Defendants' claim determination . . . is . . . prohibited."   *Dandridge*, 2010 U.S. Dist. LEXIS 5854, at *8.

Here, Plaintiff does not allege the existence of a conflict of interest, bias, or inconsistent decisions that might allow discovery beyond the administrative record.   What Plaintiff alleges instead is that Defendants applied the unambiguous terms of the Plan's SPD incorrectly.   Given that Defendants have produced the plan documents and SPDs, the EOBs, correspondence between UMR and Plaintiff regarding the claims, and documents related to the administrative appeal and decision therein, Plaintiff has sufficient information to show how the Plan applied the terms of the plan documents and SPD and allow Plaintiff to argue in this litigation that the Plan did so incorrectly.   Although Plaintiff argues that the administrative record is not "decisive" if Defendants "instead of exercising discretion, disregarded the Plan terms entirely" (Pl. Brief at 5),

Plaintiff is incorrect.   In that situation, Plaintiff would still be entitled only to discovery of the administrative record absent a conflict of interest, bias, or inconsistent decisions by the Plan – but Defendants' decisions would be found arbitrary and capricious based on the record at a subsequent stage of litigation.   *See* Pl. Brief at 5 (quoting *Bill Gray Enters. v. Gourley*, 248 F.3d. 206, 218 (3d Cir. 2001) ("If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary.").

The Court finds that discovery should be limited to the administrative record.

**B.  CONTENT OF ADMINISTRATIVE RECORD**

The next task, based on the parties' arguments, is to define the parameters of that administrative record and decide whether Defendants' production is sufficient.

Even absent a claim or litigation, ERISA requires certain disclosures to plan participants and beneficiaries.   Under ERISA, any participant or beneficiary is entitled to request the latest SPD, trust agreement, contract, "or other instruments under which the plan is established or operated."   29 U.S.C. § 1024(b)(4).

In addition, ERISA provides guidance as to what documents constitute the administrative record of a participant's claims.   As part of an ERISA plan's internal claims review and appeals process, the plan is required to provide the claimant "with any new or additional evidence considered, relied upon, or generated by the plan or issuer (or at the direction of the plan or issuer) in connection with the claim." 29 CFR § 2590.715-2719(b)(2)(C).   The regulations explain what the plan administrator must consider when deciding benefit claims:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information (i) Was relied upon in making the benefit determination; (ii) Was submitted, considered, or generated in the court of making the benefit determination, without regard to whether such document, record, or other information was relied

> upon in making the benefit determination; (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or (iv) In the case of a group health plan . . . constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 CFR 2560.503-1(m)(8).   "[T]he regulations clearly contemplate that a current internal policy must be disclosed when a decision is based upon it, 29 C.F.R. § 2560.503-1(g)(1)(v)(A), which implies that it need not be disclosed earlier."   *Goble v. Liberty Life Assurance Co.*, Civ Action No. 12-6030(PGS), 2013 WL 5603871, at *6 (D.N.J. Oct. 11, 2013) (internal quotations and citations omitted).

Here, Plaintiff fails to clearly identify what information it seeks that has not been produced by Defendants.   Nor has Plaintiff shown that the information sought was "considered, relied upon, or generated" as part of the claims review process.   *See* 29 CFR § 2590.715-2719(b)(2)(C).   The Court finds that the administrative record is complete and does not require Defendants to produce additional documents.   *See Shvartsman v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson*, 2012 WL 2118126, at *4, (D.N.J. 2012) (finding administrative record complete where "Plaintiff has failed to identify specifically what information was excluded and, moreover, has failed to show any basis for this Court to find that the excluded information was submitted, considered, or generated when the claim determination was made").

While Plaintiff relies on the *Harrison* and *Jett* cases to conclude that the administrative record includes all materials that the plan administrator should have reviewed – in addition to those materials that the administrator did review – those cases are distinguishable, and Plaintiff points to no specific information that the Plan should have considered that it did not.   *Harrison*

and *Jett* focus not on a discovery dispute but instead on whether the substantive decision of each

plan was correct due to medical necessity.   Plaintiff here disputes the reimbursement rates for

covered services – not the denial of such claims for lack of medical necessity.   Nor does

Plaintiff point to additional information that the Plan should have considered in its

determinations but did not.

Furthermore, Defendants are not obliged to produce data more broadly about UMR's

business practices or the Plan's decision to offer or not offer particular benefits under the Plan.

These items are outside the scope of the administrative record under the standards set forth in the

ERISA statute and regulations discussed above.

### C.  DISCOVERY ON NON-ERISA CLAIMS

The Supreme Court has long acknowledged that ERISA pre-emption is "clearly

expansive."   *California Div. of Labor Standards Enf't v. Dillingham Constr., Inc.*, 519 U.S. 316,

324 (1997).   ERISA Section 514(a) provides that the statute "shall supersede any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan" covered by

ERISA.   29 USC § 1144(a).   To determine whether a plaintiff's state law claims are pre-

empted, courts engage in a two-part inquiry to determine (1) if defendant has an ERISA benefit

plan, and if so, (2) whether the state laws in "relate to" this plan.   *Pane v. RCA Corp.*, 667

F.Supp. 168, 170 (D.N.J. 1987) (affirmed by *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989)).

The "relate to" standard is broadly construed.   *Way v. Ohio Cas. Ins. Co.*, 346 F. Supp. 2d 711,

718 (D.N.J. 2004).   "A law relate[s] to a covered employee benefit plan for purposes of § 514(a)

if it [1] has a connection with or [2] reference to such a plan."   *Dillingham*, 519 U.S. at 324

(internal quotations and citations omitted).

For state laws that do not reference benefit plans, courts look to the objectives of the

ERISA statute and "the nature of the effect of the state law on ERISA plans" to determine whether a law has an unacceptable connection to a benefit plan. *Id.* at 325. While courts must be careful when pre-empting application of state laws in areas of traditional state regulation, ERISA intentionally pre-empted many such laws. *Id.* at 330. In areas where ERISA specifically legislates, including benefit claims and fiduciary provisions with respect to the administration of benefit plans, state law is pre-empted. *See id.* (finding no indication that ERISA intended to pre-empt state apprenticeship training programs or wage laws and therefore that California's law did not "relate to" employee benefit plans).

In this case, Plaintiff cannot merely relabel their ERISA benefit claims as state law claims. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) (stating that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA") (internal quotations and citations omitted). All of Plaintiff's non-ERISA claims – claims of intentional interference in an economic relationship, civil conspiracy, and civil aiding and abetting against the Plan's stop-loss insurance provider – are based on the underlying denial of Plaintiff's benefit claims under the Plan and disagreement with the amounts paid for those same claims. They are therefore pre-empted by ERISA, and Plaintiff cannot seek discovery outside the administrative record on this basis.

IV.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel is DENIED.   An appropriate Order follows.

Dated: March 12, 2021

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**